UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RUDOLPH A. BUCKLEY, M.D.,

                Plaintiff,

  -v-                                            6:10-CV-974

SLOCUM DICKSON MEDICAL GROUP,
PLLC as successor in interest to Slocum
Dickson Medical Group, P.C.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                             OF COUNSEL:

KOWALCZYK, DEERY, HILTON &            ANDREW S. KOWALCZYK, JR., ESQ.
    BROADBENT, LLP                     JOSEPH S. DEERY, JR., ESQ.
Attorneys for Plaintiff
185 Genesee Street, 12th Floor
Utica, NY  13501

HISCOCK & BARCLAY, LLP                ELLEN K. EAGEN, ESQ.
Attorneys for Defendant                   ANNE B. DOTZLER, ESQ.
One Park Place                               JUDITH M. SAYLES, ESQ.
300 South State Street
Syracuse, NY  13202

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

      In July 2010 plaintiff Rudolph A. Buckley, M.D. ("plaintiff" or "Buckley") filed this action in the Supreme Court, Oneida County, against defendant Slocum–Dickson Medical Group ("Slocum–Dickson" or "defendant") asserting a state law breach of contract claim regarding

severance benefits ("First Cause of Action") and seeking declaratory judgment ("Second Cause of Action") and an accounting ("Third Cause of Action").  On August 2, 2010, defendant answered the complaint and asserted six state law counterclaims.[1]  Then, on August 12, 2010, defendant removed the action to federal court, arguing that the First Cause of Action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 ("ERISA").

The parties have completed discovery, and plaintiff has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Defendant opposes, and plaintiff replied.  In its opposition papers, defendant suggests it is entitled to summary judgment on plaintiff's First Cause of Action.  However, defendant did not make a formal cross-motion.

Oral argument was heard on May 24, 2012, in Utica, New York.  Decision was reserved.

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.  Buckley, a resident of Utica, New York, is an orthopedic physician specializing in spinal surgery.  Slocum–Dickson is a New York limited liability company that operates a for-profit medical practice in the Utica area.  Plaintiff began working at Slocum–Dickson on August 17, 2000.  The parties' employment relationship was governed by two separate contracts—an Employment

---

[1] Defendant's counterclaims include:  (1) a breach of contract claim alleging plaintiff violated his contractual obligation to provide professional patient care by terminating his employment on August 4, 2009; (2) a breach of contract claim regarding clinical trials in which plaintiff was engaged at the time of his termination; (3) a breach of contract claim alleging plaintiff violated the non-solicitation clause of the Employment Agreement by inducing a physician assistant to resign from Slocum–Dickson; (4) a request for declaratory judgment regarding restrictive covenants in the Employment Agreement; (5) a conversion claim alleging plaintiff removed documents related to the clinical trials; and (6) a breach of fiduciary duty claim related to plaintiff's early termination.

Agreement effective August 17, 2000, and a Severance Plan dated October 24, 2002.

Pursuant to the Employment Agreement, Buckley "shall observe and follow the highest ethics and standards of the profession, . . . and at no time act in such a way as to impair the confidence of patients or of the public in the profession." Eadline Aff., Ex. A, ECF No. 25-1, ¶ 2 ("Employment Agreement").  He is also "responsible for providing the highest professional medical care to all patients of [Slocum–Dickson]." Id. ¶ 4.  Either party may terminate the Employment Agreement "with or without cause" through written notice provided at least ninety days prior to the effective date of termination. Id. ¶ 12(A)(ii).  If Buckley gives such notice but fails to continue to work for the entire notice period, or if he fails to give notice and unilaterally withdraws from employment, he must pay Slocum–Dickson ten thousand dollars ($10,000) in liquidated damages.  This sum represents "the amount reasonably anticipated to be lost by the Employer in the event the Employee elects to unilaterally terminate his/her employment." Id.

Upon termination of his employment, Buckley "shall be paid by March 31st (thirty first) of the following year . . . all compensation to which [he] is entitled, prorated to the effective date of termination, as well as any severance pay [he] is entitled to under the [Severance Plan]." Id. ¶ 12(B).  The Employment Agreement also contains restrictive covenants under which plaintiff is barred from practicing within twenty-five miles of defendant's main office for three years after the termination of his employment.[2]  He is also prohibited from soliciting former or existing patients or inducing any of defendant's employees to terminate his or her employment for three years.

---

[2] Buckley left Slocum–Dickson to take a position in Hamilton, New York.  Defendant acknowledges this is outside the twenty-five mile radius included in the restrictive covenant.

Under the Severance Plan, an employee with at least seven years of service and whose employment has terminated for reasons other than death, disability, or retirement "shall receive . . . an amount equal to sixty-five percent (65%) of [his] share of the accounts receivable of [defendant], existing as of the date of termination, assigned to [his] department . . . within the preceding two (2) years." Eadline Aff., Ex. B, ECF No. 25-2, ¶ 2(i) ("Severance Plan").  This severance payment is reduced by the aggregate amount of disability income paid to the employee during the twelve months preceding termination.  The severance payment is to be paid in three increments:  thirty-five percent (35%) shall be paid one year after termination of employment; thirty-five percent (35%) the second year after termination; and thirty percent (30%) the third year.  In the alternative, Slocum–Dickson may elect to pay in monthly installments over the course of three years.

The Severance Plan provides defendant's Board of Managers ("the Board") with "exclusive authority and discretion to:  (i) Determine whether an individual is eligible for any benefits under the Plan; [and] (ii) Determine the amount of benefits, if any, an individual is entitled to from the Plan."  Id. ¶ 16.  The Board's determinations and interpretations are to be given deference in all courts "to the maximum allowed by applicable law" and shall "[n]ot be overturned or set aside by any court of law unless found to be arbitrary and capricious, or made in bad faith."  Id.

If an employee's claim for severance benefits is wholly or partially denied, Slocum–Dickson must provide written notice of the decision within ninety days.  This notice must identify the specific reason(s) for the denial, reference the specific provisions of the contract upon which the denial is based, describe what additional material may be necessary to perfect the claim, and explain the steps to be taken to obtain review of the decision.  The

Board has "sole responsibility" to review a denied claim. Id. ¶ 15.[3] The Severance Plan repeatedly references ERISA, which governs its provisions.

On June 2, 2009, Buckley provided written notice to Slocum–Dickson that he was terminating his employment effective August 30, 2009. Defendant acknowledged that this satisfied the ninety-day notice provision in the Employment Agreement. The parties traded various correspondence regarding Buckley's departure. Included in this correspondence was Buckley's request for severance benefits to which he was entitled under the Severance Plan. Defendant developed and began to implement a plan for plaintiff's exit from practice at Slocum–Dickson. Plaintiff participated in meetings regarding this exit plan. On July 15, 2009, defendant mailed letters to plaintiff's patients advising that August 28, 2009, would be his final day in the office.

Buckley then determined that it was financially advantageous to him to terminate his employment before August 30, 2009. Consequently, on August 4, 2009, he provided defendant with a letter advising of his immediate termination. At the same time, he tendered a check for $10,000 as liquidated damages for failure to complete the ninety-day notice period. Slocum–Dickson refused to accept Buckley's August 4 termination date, arguing that the earlier termination date would negatively impact the continuity of patient care. Buckley did not work for defendant after August 4, 2009. Further, on the advice of counsel, plaintiff refused to sign an agreement created by defendant under which he would continue to oversee the ongoing care of his patients until the end of August 2009. This refusal was based on defendant's refusal to include a provision acknowledging August 4, 2009, as

---

[3] The Severance Plan also contains an arbitration clause mandating that "upon written demand" of either party any disagreement shall be settled by binding arbitration in Utica, New York. Id. ¶ 9. However, neither party has invoked its right to arbitration.

plaintiff's effective date of termination.

At a meeting on September 1, 2010, the Board determined Buckley was not entitled to any amount of severance benefits. This decision was conveyed to plaintiff by letter dated September 3, 2010. Buckley has not received any severance to date.

The parties agree that if calculated from an effective termination date of August 30, 2009, plaintiff's total severance benefit is $47,912. The parties disagree, however, on the amount of severance benefits due if the earlier August 4 date is deemed the termination date.[4] It is undisputed that an August 4, 2009, termination date would yield a gross severance benefit of $698,470. According to plaintiff, a total of $82,624 in disability income which he received between August 5 and September 5, 2008, should be subtracted from the gross severance benefit, for a total severance benefit of $615,846. Defendant maintains that the total amount of disability income plaintiff received in 2008—$243,374—must be deducted from the gross severance benefit, for a total severance benefit of $455,096. The parties also differ on how interest, if awarded, should be calculated.

## III. DISCUSSION

Buckley seeks summary judgment on his breach of contract/ERISA claim because the Board's decision to deny him severance benefits was arbitrary and capricious. He further seeks declaratory judgment establishing that: (1) August 4, 2009, is the date on which his employment terminated; (2) he is entitled to sixty-five percent of his share of defendant's

---

[4] In the Statement of Material Facts submitted with his motion for summary judgment, plaintiff notes that "an August 4, 2009 effective resignation dated [sic] preferred by Plaintiff would have entitled Plaintiff to a severance Plan benefit in the amount of $455,096." Statement of Material Facts, ECF No. 22-1, ¶ 15. However, this appears to be a recitation of the sum defendant claims to be appropriate based on an August 4, 2009, termination date. Indeed, the next several paragraphs in the Statement of Material Facts outline plaintiff's proposed calculation and concludes that $615,846 is the appropriate amount.

accounts receivable assigned to plaintiff's department between August 4, 2007, and August 4, 2009; (3) he was entitled to have been paid all compensation and severance benefits by March 31, 2010; and (4) any and all restrictive covenants in both contracts are invalid and unenforceable because defendant breached the contracts.

Slocum–Dickson argues that the Board's decision to deny severance benefits was authorized by the Severance Plan and was neither arbitrary nor capricious. Defendant further asserts that plaintiff's affidavit contains inadmissible hearsay and legal conclusions and, therefore, must be stricken from the docket.

### A. Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4, 106 S. Ct. at 2511 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the

opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Plaintiff's Motion Papers

Defendant correctly notes that the Buckley affidavit submitted in support of his motion contains hearsay, conclusory statements, and legal arguments. Accordingly, such content in the forty-nine-page affidavit will be stricken and the impermissible evidence therein will not be considered. See FED. R. CIV. P. 56(c)(4). Consideration of Buckley's reply affidavit will be similarly limited. It is also noted that there is virtually no analysis in the memorandum of law filed by plaintiff's attorney. However, defendant's invitation to therefore summarily deny plaintiff's motion is declined as most of the material facts are undisputed, and the interpretation of an unambiguous contract, like the contracts at issue here, is a matter of law for a court. Krumme v. WestPoint Stevens Inc., 238 F.3d 133, 139 (2d Cir. 2000).

### C. Effective Date of Termination

Buckley asserts that his severance benefits must be calculated based on an effective termination date of August 4, 2009. Slocum–Dickson maintains that plaintiff is bound by his original termination date—August 30, 2009. The plain language of the Employment

Agreement supports plaintiff's position.

On June 2, 2009, Buckley provided defendant with ninety-days' written notice that he was terminating his employment effective August 30, 2009. On August 4, 2009, he tendered notice of his unilateral termination of employment, effectively immediately, and he did not return to work thereafter. The Employment Agreement expressly and unambiguously contemplates a unilateral termination and imposes a $10,000 liquidated damages penalty for failure to complete the ninety-day notice period. This sum represents "the amount reasonably anticipated to be lost by the Employer in the event the Employee elects to unilaterally terminate his/her employment." Employment Agreement ¶ 12(A)(ii). Moreover, there is nothing in the Employment Agreement indicating that Slocum–Dickson must formally accept an employee's resignation for it to be effective.

By unilaterally terminating his employment on August 4, Buckley failed to complete the ninety-day notice period. He tendered a $10,000 payment in accordance with the Employment Agreement. There is nothing about this conduct that breached the Employment Agreement. Thus, his effective date of termination is August 4, 2009. Accordingly, any severance payment shall be calculated from that date.

### D. Decision of the Board

The Board determined plaintiff is not entitled to any severance benefits, regardless of the effective date of termination. Plaintiff argues that the Board's decision was arbitrary and capricious and must be set aside.

The Severance Plan initially mandates that an employee with at least seven years of service and whose employment has terminated for reasons other than death, disability, or retirement "shall receive" specified benefits. Severance Plan ¶ 2. However, it subsequently

provides that "[n]otwithstanding any other provision of this Plan," the Board has "exclusive authority and discretion" to determine whether an employee is eligible for such benefits in the first place. Id. ¶ 16.

As the Severance Plan thus confers discretion on the Board, its determinations and interpretations will be upheld unless they are arbitrary and capricious or in bad faith. See Hobson v. Metro. Life Ins. Co., 574 F.3d 75, 82 (2d Cir. 2009) (where a written benefits plan, governed by ERISA, confers discretion upon the plan administrator to determine eligibility, such decisions will not be disturbed unless found to be arbitrary and capricious); Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389 (1995) (where a contract confers discretion, the implied obligation of good faith "includes a promise not to act arbitrarily or irrationally in exercising that discretion").

Under this standard, the Board's decision to deny benefits may only be overturned "if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." Hobson, 574 F.3d at 83 (internal quotation marks omitted). Substantial evidence "is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] . . . requires more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995) (alteration in original) (internal quotation marks omitted). Finally, where the same entity both evaluates and pays the benefits under the plan, there arises a conflict of interest that must be taken into account and "weighed as a factor in determining whether there is an abuse of discretion." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 111–12, 115, 128 S. Ct. 2343, 2348, 2350 (2008) (internal quotation marks omitted).

Defendant contends that the Board carefully considered plaintiff's claim for severance benefits, deliberated for several hours, received advice from counsel, and unanimously determined he was not entitled to benefits because he accelerated his termination date for personal financial gain to the detriment of his patients' ongoing care. In an affidavit, Dr. Stephen Eadline, President of the Board since April 2007, reports that plaintiff was the only qualified physician to oversee the follow-up care for his surgical patients at the time of his early termination in August 2009. Defendant further asserts that plaintiff's abrupt termination caused it to incur expenses in order to terminate clinical trials in which plaintiff was engaged.

However, careful consideration of a claim, advice from counsel, and unanimity of a decision do not constitute substantial evidence supporting the denial of the claim. Defendant does not identify even a scintilla of evidence to show how plaintiff's earlier termination date and refusal to oversee patient care after August 4 actually negatively impacted patient care. There is nothing in the record suggesting defendant was unable to refer plaintiff's patients to other providers, reschedule their appointments, or find another doctor to temporarily provide or oversee the care of Buckley's patients from August 4 to August 30, 2009. Even assuming defendant incurred expenses for such replacement care, in addition to the costs of winding down plaintiff's clinical trials, the $10,000 liquidated damages penalty was designed to compensate defendant for exactly these types of expenses.

Further, the Board's reasoning is not supported by the contracts. As noted above, Buckley did not breach the Employment Agreement by tendering his immediate resignation on August 4, 2009. Neither the Employment Agreement nor the Severance Plan contain any provision limiting plaintiff's right to unilaterally terminate his employment without completing the notice period. The only consequence of exercising this contractual right is the payment

of $10,000 in liquidated damages, which Buckley paid. The provision allowing for unilateral termination does not condition this right on the continuity of medical care for plaintiff's patients.

Additionally, the Board failed to provide adequate and specific notice of its denial. The September 3, 2010, letter notifying plaintiff of the Board's decision states in full:

> With regard to your severance payout, the [Board] has exercised its exclusive authority and discretion under the [Severance Plan] and determined that you are not entitled to any amount of benefits. If you question this decision, you have a right to file a claim, in accordance with the Claims Procedure of the Plan.

Eadline Aff., Ex. J, ECF No. 25-10. This letter did not provide plaintiff with a statement of reasons for the denial of benefits, as required by ERISA and the Severance Plan. Nor did it identify the provisions of the Severance Plan or Employment Agreement upon which its denial was based or explain what material, if any, was needed to perfect the claim.

Finally, defendant is both the entity that decides whether plaintiff is entitled to benefits and the entity that would make such a payment. There is no indication that the Board was "wall[ed] off" from any impact its decision would have on Slocum–Dickson's finances, and defendant has not identified any internal checks on the Board's decision-making. Thus, the conflict of interest factor weighs more heavily toward a finding of an abuse of discretion. See Glenn, 554 U.S. at 117, 128 S. Ct. at 2351 (the conflict of interest factor should be afforded less weight only "where the administrator has taken active steps to reduce potential bias"); Solomon v. Metro. Life Ins. Co., 628 F. Supp. 2d 519, 529 (S.D.N.Y. 2009) (conflict of interest weighed heavily against MetLife's denial of benefits because there was "no evidence that MetLife separated its financial interests from the claim determination process").

In short, defendant's decision to deny severance benefits was not supported by such

evidence that a reasonable mind could accept as adequate to support the denial. It was instead erroneously based on plaintiff's exercise of his contractual rights. The aforementioned factors, viewed together, show that the Board's denial of benefits was arbitrary and capricious. Accordingly, plaintiff's motion for summary judgment will be granted with regard to the First Cause of Action.

### E. Damages

Damages can be determined pursuant to the undisputed facts and the unambiguous terms of the Severance Plan. The parties agree that, according to the formula in the Severance Plan and based on a termination date of August 4, 2009, plaintiff's gross severance benefit is $698,470. They dispute, however, the amount of disability income that should be applied to reduce this sum. Plaintiff claims $82,624 in disability income should be subtracted from the gross severance benefit, while defendant maintains that $243,374 must be deducted.

The formula outlined in the Severance Plan provides that the gross severance benefit shall be reduced by the total amount of disability income paid to plaintiff "during the twelve (12) month period preceding [his] termination." Severance Plan ¶ 3. Buckley's employment terminated on August 4, 2009. The one-year period prior to this date was August 5, 2008, through August 4, 2009. Thus, the benefit must be reduced by the amount of disability income paid to plaintiff during that time. It is undisputed that Buckley received a total of $243,374 ($2665 per day) in disability income from June 6 to September 5, 2008.[5] See Statement of Material Facts ¶ 16(c). He therefore received $82,615 in disability income over

---

[5] There is no evidence that Buckley received disability income at any other time during the relevant time period.

the thirty-one days from August 5 to September 5, 2008.[6] Subtracting this sum from the gross benefit amount of $698,470 equals a final severance benefit of $615,855.

Pursuant to the Severance Plan—which guides the distribution of the severance payment—the benefit is payable over three years: 35% ($215,549.25) the first year after termination (August 4, 2010); 35% ($215,549.25) the second year (August 4, 2011); and 30% ($184,756.50) the third year (August 4, 2012). Accordingly, Buckley is entitled to interest at the statutory rate on these amounts calculated from the dates set forth.

### F. Remaining Claims and Counterclaims

Buckley does not provide a legal basis or argument for entitlement to a declaratory judgment (Second Cause of Action) or an accounting (Third Cause of Action). However, the first three declarations he seeks have been addressed, and the need for an accounting made moot, by the above discussion and conclusions. Therefore, the Second and Third Causes of Action will be dismissed.

Defendant's First Counterclaim for breach of contract and its Sixth Counterclaim for breach of fiduciary duty involve essentially the same facts and allegations as plaintiff's First Cause of Action. Indeed, in these claims defendant alleges Buckley's unilateral and immediate termination of employment on August 4, 2009, breached the Employment Agreement and constituted bad faith. As repeatedly noted above, however, this conduct was explicitly authorized by the contract, and Buckley did not breach the Employment Agreement by tendering his immediate resignation on August 4. Therefore, defendant's First and Sixth

---

[6] Plaintiff followed the formula properly, but made a minor mathematical error. The proper total disability income for the relevant period is $82,615 ($2665 per day multiplied by thirty-one days), not $82,624 as plaintiff calculated.

Counterclaims will be dismissed <u>sua sponte</u> for the same reasons as outlined above.

Defendant's Second, Third, Fourth, and Fifth Counterclaims remain for trial.[7]

## IV. <u>CONCLUSION</u>

The Employment Agreement permitted Buckley to tender his immediate resignation on August 4, 2009, even though he had earlier provided ninety-days' notice that his employment would terminate on August 30, 2009.  Buckley paid $10,000 in liquidated damages pursuant to the Employment Agreement.  He therefore did not breach the contract by unilaterally terminating his employment on August 4, 2009—the effective date of termination.  The Board's subsequent decision to deny plaintiff any benefits under the Severance Plan was arbitrary and capricious because it was erroneous and not supported by substantial evidence.

Therefore, it is

ORDERED that

1. Plaintiff Rudolph A. Buckley's motion for summary judgment is GRANTED in part and DENIED in part;

2. Plaintiff is granted summary judgment as to the First Cause of Action;

3. Plaintiff is entitled to $615,855 plus interest in severance benefits[8];

4. Interest shall be calculated at the statutory rate based upon the following amounts and dates:  $215,549.25 from August 4, 2010; $215,549.25 from August 4, 2011; and

---

[7] Although the only federal claim is resolved with this Memorandum–Decision and Order, supplemental jurisdiction will continue to be exercised over the four remaining state claims in the interest of judicial efficiency.  <u>See</u> 28 U.S.C. § 1367(a).

[8] The final judgment will be subject to the results of the bench trial on defendant's four remaining counterclaims or any settlement agreement entered into between the parties.

$184,756.50 from August 4, 2012;

    5.  Plaintiff's Second and Third Causes of Action are DISMISSED;

    6.  Defendant Slocum Dickson Medical Group's First and Sixth Counterclaims are DISMISSED; and

    7.  Defendant's Second, Third, Fourth, and Fifth Counterclaims remain for trial.

    IT IS SO ORDERED.

_____
United States District Judge

Dated: April 23, 2013
       Utica, New York.