UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RUDOLPH A. BUCKLEY, M.D.,

                Plaintiff,

   -v-                                           6:10-CV-974

SLOCUM DICKSON MEDICAL GROUP,
PLLC as successor in interest to Slocum
Dickson Medical Group, P.C.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                  OF COUNSEL:

KOWALCZYK, TOLLES LAW FIRM       ANDREW S. KOWALCZYK, JR., ESQ.
Attorneys for Plaintiff                      JOSEPH S. DEERY, JR., ESQ.
185 Genesee Street                        MICHELLE E. BROADBENT, ESQ.
Utica, New York 13501

BARCLAY DAMON LLP                  ANTHONY J. PIAZZA, ESQ.
Attorneys for Defendants
2000 HSBC Plaza
100 Chestnut Street
Rochester, New York 14604

One Park Place                               JUDITH M. SAYLES, ESQ.
300 South State Street                    ANNE B. DOTZLER, ESQ.
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

     Plaintiff Rudolph A. Buckley ("Buckley" or "plaintiff") initially filed this action in the

Supreme Court, Oneida County, against his former employer, defendant Slocum-Dickson

Medical Group ("Slocum-Dickson" or "defendant") asserting, inter alia, a state law breach of contract claim and seeking a declaratory judgment and an accounting. Defendant, claiming that the breach of contract cause of action arose under the Employee Retirement Income Security Act of 1974 ("ERISA"), removed the case to federal court. The parties completed discovery and plaintiff moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

On April 23, 2013, a Memorandum-Decision & Order issued partially granting Buckley's motion. Buckley v. Slocum Dickson Med. Grp., PLLC ("Buckley"), 941 F. Supp. 2d 251 (N.D.N.Y. 2013). The parties stipulated to dismissal of the remaining causes of action and plaintiff then sought attorneys' fees, which were granted over Slocum-Dickson's objection in the amount of $47,723. Judgment was entered in plaintiff's favor for $666,455.64.

Slocum-Dickson then appealed the grant of summary judgment to Buckley, who cross-appealed seeking an upward modification of the fee award. The U.S. Court of Appeals for the Second Circuit, after constructively amending plaintiff's complaint to assert a claim under the Employee Retirement Income Security Act of 1974 ("ERISA"), affirmed the judgment by summary order and left the amount of attorneys' fees undisturbed. Buckley v. Slocum Dickson Med. Grp., PLLC ("Buckley II"), 585 F. App'x 789, 794 (2d Cir. 2014) (summary order).

Buckley has now filed this motion seeking to recover additional attorneys' fees from Slocum-Dickson for time accrued subsequent to July 29, 2013, the time expended defending the grant of summary judgment on appeal. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. DISCUSSION[1]

Slocum-Dickson raises a litany of objections to Buckley's fee request, asserting it is inappropriate, untimely, unreasonably large, and based almost entirely on work improperly completed by a disbarred attorney.[2]

### A. Propriety of Fee Request

Buckley purports to base this latest fee request on the same broad contractual language found in the Employment Agreement that formed the basis of his first fee award. Slocum-Dickson asserts that, "[a]bsent remand, a district court in this Circuit is not authorized to determine in the first instance whether an award of attorneys' fees is warranted for the appellate phase of the proceedings." Def.'s Mem. Opp'n, ECF No. 63, 7.[3]

"The award of attorneys' fees may involve intensive factfinding and a large degree of discretion. Therefore a district court generally decides this issue in the first instance." L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc., 2013 WL 6388633, at *1 (E.D.N.Y. Dec. 5, 2013) (citations omitted).

As relevant here, ERISA provides that "in any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Indeed, this is the same ERISA provision under which the Second Circuit affirmed the original fee award. See

---

[1] The complete factual background in this matter is available in the prior order partially granting Buckley's motion for summary judgment and will not be repeated here. See Buckley I, 941 F. Supp. 2d at 253-55.

[2] This issue was previously noted in the downward modification of plaintiff's first fee request. See ECF No. 41 ("[P]laintiff does not address the role its employee, Edward Sinker, who has been permanently disbarred, played in this litigation and how that factors into the appropriate measure of attorneys' fees.").

[3] Pagination corresponds with that assigned by CM/ECF.

Buckley II, 585 F. App'x at 794 ("Having won summary judgment, Buckley was entitled to seek attorney's fees pursuant to both the employment agreement and Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1)).

Slocum-Dickson is correct to note that, occasionally, the Second Circuit will "recognize the appropriateness of appellate attorneys' fees in particular cases" while leaving "the precise calculation of those fees to the discretion of the district court." L.I. Head Start Child Dev. Servs., Inc, 2013 WL 6388633 at *1 (citations omitted). But although defendant makes much of the Second Circuit's silence in Buckley II regarding any fees that may properly be pursued following the panel's affirmance, such an omission, at least in the context of an ERISA claim, is not dispositive on the fee question. Id. at *2 ("In this case, although the Second Circuit's order of affirmance does not mention appellate attorneys' fees, nothing in the Appellate Rules of Civil Procedure requires the Second Circuit's judicial imprimatur before a district court may actually award such fees."). Accordingly, plaintiff's motion for appellate fees is properly decided here in the first instance.

## B. Timeliness

Having lost the first point, Slocum-Dickson next argues Buckley's request is untimely. Specifically, defendant claims plaintiff has run afoul of Federal Rule of Civil Procedure 54(d), which requires a fee request to be submitted within fourteen days of entry of judgment. Def.'s Opp'n at 9.

This rule provides that, "[u]nless a statute or a court order provides otherwise, [a fees] motion must . . . be filed no later than 14 days after the entry of judgment . . . [and] state the amount sought or provide a fair estimate of it . . . ." FED. R. CIV. P. 54(d)(2)(B).

Again, however, L.I. Head Start Child Dev. Servs., Inc.'s reasoning is persuasive. There, the Court concluded "no part of [Federal Rule of Civil Procedure] 54 is applicable to requests for appellate attorneys' fees" in ERISA cases because the statute itself "does not set out any time limits for making a motion for appellate attorneys' fees." 2013 WL 6388633, at *4, *5. Rather, "a prevailing party must seek appellate attorneys' fees in an ERISA action within a <u>reasonable period of time</u> after the circuit's entry of final judgment." Id. at *5 (emphasis added).

Here, the Second Circuit entered final judgment on September 22, 2014. Buckley II, 585 F. App'x at 794. From that date, Slocum-Dickson had until December 21, 2014 to seek further review of the decision at the Supreme Court. See Sup. Ct. Rule 13.1 & .3 (noting ninety day time limitation for certiorari petition runs from entry of judgment, not issuance of mandate). Since Buckley filed this fee request on March 19, 2015, a little under three months after this window closed, see ECF No. 61, the delay is not unreasonable under the circumstances. See, e.g., Cush-Crawford v. Adchem Corp., 234 F. Supp. 2d 207, 208 (E.D.N.Y. 2002) (finding motion for fees timely where it was filed two months after defendants' right to seek further review ended). Accordingly, plaintiff's fee request is timely.

### C. Edward Sinker[4]

Nevertheless, Slocum-Dickson argues that Buckley's motion for fees should still be denied—in its entirety—because "a significant amount of the services rendered . . . were performed by a disbarred attorney who appears to have been engaging in the practice of law." Def.'s Opp'n at 10. Specifically, defendant claims "[a] party is not entitled to *any fees*

---

[4] Edward Sinker, whose activities are at issue, was disbarred following his 1994 conviction for mail fraud. Matter of Sinker, 209 A.D.2d 85 (N.Y. App. Div. 4th Dep't 1995).

where an attorney has engaged in misconduct by violating the Disciplinary Rules, such as, as relevant here to the work performed by Plaintiff's counsel, aiding in the unauthorized practice of law." Id.

"The practice of law involves the rendering of legal advice and opinions directed to particular clients." Matter of Rowe, 604 N.E.2d 728, 731 (N.Y. 1992). New York permits only properly admitted and registered attorneys to engage in such conduct, see N.Y. Jud. Law § 484, and in fact explicitly authorizes penalties for non-attorneys who violate this limitation. Id. §§ 478, 485. Importantly, this proscription against the unauthorized practice of law applies with equal, if not greater force, to disbarred attorneys. Id. §§ 90, 486; In re Rosenbluth, 36 A.D.2d 383, 385 (N.Y. App. Div. 1st Dep't 1971) ("A suspended or disbarred attorney holds approximately the same status as one who has never been admitted . . . .").

In other words, "[a]ctivities such as 'preparing legal memoranda and documents to be filed in court'—even if signed by an admitted attorney—or conducting interviews with clients are forbidden to a suspended or disbarred lawyer." Farb v. Baldwin Union Free Sch. Dist., 2011 WL 4465051, at *11 (E.D.N.Y. Sept. 26, 2011) (citations omitted). In fact, New York law requires the Appellate Division to insert language into every disbarment order indicating the former attorney must "desist and refrain from the practice of law in any form, either as principal or as agent, clerk or employee of another" and is thereafter forbidden from, inter alia, "giving to another of an opinion as to the law or its application, or of any advice in relation thereto." N.Y. Jud. Law § 90(2).

Notwithstanding the seemingly broad sweep of this language, Buckley points to the New York Court of Appeals' decision in Matter of Rowe to argue that a "disbarred attorney may do whatever activity a layperson may legally and ethically do," such as what Sinker

purports to have been doing here: performing paralegal activities for attorneys in good standing. Pl.'s Mem., ECF No. 61-4, 19. But this is a strained reading of Rowe, which merely held that a disbarred attorney could not be prevented, consistent with First Amendment principles, from publishing a law review article that was directed at the general public. 604 N.E.2d at 728. As the Court clarified:

> The courts may, in the public interest, prohibit attorneys from practicing law and that prohibition may incidentally affect the attorney's constitutional right to free speech by forbidding the giving of advice to clients. Where the individual is not practicing law, however, and does not purport to be exercising judgment on behalf of any particular individual with whose circumstances he is directly acquainted, government regulation ceases to function as legitimate regulation of professional practice with only incidental impact on speech, but rather impermissibly interferes with that individual's First Amendment rights.

Id. (citations and internal quotation marks omitted) (emphasis added).

A closer review of case law on this question seems to indicate that the distinction drawn in Matter of Rowe—between conduct directed at the public generally and conduct occurring at the direction of attorneys regarding a particular client—seems to be the focus of the Appellate Division's decisions on the issue of whether some act constitutes the "unauthorized practice of law."

Indeed, the Appellate Division appeared to rely on this distinction in permitting a suspended attorney to continue to operate a "calendar watching service during the course of his suspension." In re Rosenbluth 36 A.D.2d 383, 384 (N.Y. App. Div. 2d Dep't 1971). In so doing, the Court carefully noted that it did not consider the suspended attorney to be acting "as a direct employee of [the] attorneys who subscribe[d]" to his service. Id.; but see id. (McNally, J., dissenting) ("In my opinion, the operation of the [calendar watching service]

- 7 -

makes this [suspended attorney] an agent or employee of all the 3500 subscribers to the service . . . .").

However, since the fee request at issue here involves services directed toward a particular client, neither Matter of Rowe nor In re Rosenbluth are of much help to Sinker. In fact, disciplinary proceedings appear to suggest that the act of providing "paralegal or clerical services" to members of a law firm may fall on the wrong side of the boundary between what a layperson may permissibly do and what constitutes the unauthorized practice of law. See, e.g., In re Hancock, 55 A.D.3d 216, 220 (N.Y. App. Div. 2d Dep't 2008) (noting disbarment of fellow attorney was proper where, inter alia, he permitted a "disbarred felon to . . . advertise himself as his paralegal"); Matter of Raskin, 217 A.D.2d 187,189 (N.Y. App. Div. 2d Dep't 1995) (noting that disbarred attorney performing services "of a law clerk" supported a finding of unauthorized practice of law); Tucci v. Dep't of State, 63 A.D.2d 835, 836 (N.Y. App. Div. 4th Dep't 1978) (finding hearing officer's conclusion that petitioner engaged in the unauthorized practice of law by "drafting legal documents" to be supported by substantial evidence).

A recent disciplinary decision from the Appellate Division confirms this view. In Matter of Brandes, the Appellate Division denied a disbarred attorney's renewed bid for reinstatement, specifically finding he had "engaged in the unauthorized practice of law during the period of his disbarment when he provided paralegal services via the Internet." 1999-07006, NYLJ 1202730091231, at *2 (N.Y. App. Div. 2d Dep't June 3, 2015). There, the Court noted that the disbarred attorney would often give advice to other attorneys on difficult matters and would even "draft briefs and other litigation papers for other attorneys." Id.

The Court held that "[s]uch rendering of legal advice or opinion constitutes the practice of law, since [the disbarred attorney] in so doing, exercised professional judgment directed at the legal problem of a particular client, notwithstanding the fact that [the disbarred attorney] had no direct contact or relationship with the client." Id. The Court concluded that "the provision of such services can be deemed to be performing legal services for a client, namely, the attorneys for whom [the disbarred attorney] drafted the brief and documents." Id. In closing, the Court noted that "[s]uch giving of advice and performance of legal services certainly violated the spirit, if not the letter, of Judiciary Law § 478." Id.

Mindful of the broad sweep of New York Judiciary Law as well as the common thread running through the disciplinary decisions recited above, Buckley has failed to cite to any authority satisfactorily indicating Sinker's work as a paralegal would be permissible under these circumstances. Accord N.Y.C. Eth. Op. 1998-1 (Dec. 21, 1998), 1998 WL 1557150 (noting that the Appellate Division has summarily denied at least one attorney's motion seeking permission "to be employed in a law office as a paralegal, law clerk or legal research assistant"). Therefore, after review of the billing records submitted in this case and consideration of these guiding legal principles, it is appropriate to follow the same approach to attorneys' fees that was employed in considering Buckley's prior fee request. See Order at ECF No. 41 (adopting portion of defendant's declaration calculating plaintiff's fee award after subtracting fees generated by Sinker).[5] Accordingly, plaintiff's request for any fees associated with Sinker's work will be denied.

---

[5] Defendant's further invitation to completely deny plaintiff's fee request based on Farb's reasoning is declined. Farb stands for the proposition that an attorney's misconduct may provide a suitable basis on which a client may terminate that attorney for cause and subsequently preclude recovery of any fees. No such circumstances are present here.

### D. Reasonable Fee Award

The only remaining issue, then, is what constitutes a reasonable fee award under these circumstances. First, Slocum-Dickson suggests any award should be reduced by the amount of fees incurred in connection with Buckley's unsuccessful cross-appeal. Def.'s Mem. Opp'n at 19. However, § 1132(g)(1) merely requires the fee claimant to have achieved "some degree of success on the merits." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 245 (2010); see also L.I. Head Start Child Dev. Servs., Inc., 2013 WL 6388633 at *6 (considering fee request where plaintiffs "prevailed at the circuit level" following appeal by defendants). Plaintiff has done so here.

"In calculating attorney's fees, the district court must first determine the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—[which] creates a presumptively reasonable fee." Stanczyk v. City of New York, 752 F.3d 273, 284 (2d Cir. 2014) (citation and internal quotation marks omitted).[6]

As recently as January 28, 2015, courts in this District have found $210 per hour for experienced attorneys was an appropriate rate of compensation for work performed in a similar ERISA case during a period between 2013 and 2014. See Upstate N.Y. Eng'rs Health Fund v. FMC Demolition, Inc., 2015 WL 401113, at *7 (N.D.N.Y. Jan. 28, 2015) (Sannes, J.). Notably, the $47,723 fee plaintiff's attorneys have already received as a result of the underlying litigation was achieved, in part, by concluding that the applicable hourly rate for an experienced attorney in this jurisdiction was $225. Although plaintiff suggests an

---

[6] Courts retain discretion to exclude excessive, redundant, or otherwise unnecessary hours as well as the authority to apply across-the-board reductions for vague entries. Finkel v. Univ. Elec. Corp., 970 F. Supp. 2d 108, 129 (E.D.N.Y. 2013).

upward departure is appropriate here, there is no compelling reason to disturb the prior calculation.

Indeed, Buckley's request for an additional $97,695.25 in fees, based on a total of over 500 hours, would be incongruous with both the prior award as well as a calculation of how much time could reasonably have been spent working on this appeal. See, e.g., L.I. Head Start Child Dev. Servs., Inc., 2013 WL 6388633 at *6 (concluding a total of 128.8 hours spent on similar ERISA appeal was reasonable). After a careful review of the parties' submissions, the amount of time reasonably expended achieving the result on appeal was 106.5 hours. This total, multiplied by the reasonable hourly rate of $225, results in a fee award of $23,962.50.

## V. **CONCLUSION**

Therefore, it is

ORDERED that

1. Plaintiff's motion for post-appeal attorneys' fees is GRANTED in part and DENIED in part; and

2. Plaintiff is awarded attorneys' fees in the sum of $23,962.50.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: July 1, 2015.
       Utica, New York.